**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KATELYN WHITTEMORE, ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | Case No.: 2:19-cv-01951-GMN-EJY |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| VAST HOLDINGS GROUP, LLC, *et al.*, ) | |
| ) | |
| Defendants/Counterclaimants. ) | |

Pending before the Court is the Motion to Dismiss, (ECF No. 92), filed by Plaintiff/Counter-Defendant Katelyn Whittemore ("Ms. Whittemore"). Defendants/Counterclaimants Vast Holdings Group, LLC, *et al.* ("Vast") filed a Response, (ECF No. 99), to which Ms. Whittemore filed a Reply, (ECF No. 102).

For the reasons discussed below, the Court **GRANTS** Ms. Whittemore's Motion to Dismiss.

**I.   BACKGROUND**

This case arises from Vast allegedly stripping Ms. Whittemore of her duties and eventually terminating her employment for helping her mother file a discrimination charge with the U.S. Equal Employment Opportunity Commission ("EEOC") against an entity purportedly affiliated with Vast. The parties provide a detailed review of the facts alleged in Ms. Whittemore's Second Amended Complaint ("SAC"), and Vast's Counterclaim, as well as the background information and procedural history of this case in their briefing for the instant Motion. (*See* Anti-SLAPP Mot. Dismiss ("Anti-SLAPP MTD") 5:16–11:19, ECF No. 92); (Resp. 3:17–6:8, ECF No. 99).

Relevant to the Court's analysis, however, Vast's claim stems from Ms. Whittemore's allegations of retaliation and termination after sharing an email to her mother, purportedly in breach of her employment agreement. Prior to becoming an employee, she and Defendant Vast Solutions Group, LLC allegedly entered into an employment agreement, barring her from disclosing or furnishing confidential information to anyone unaffiliated with Vast. (Answer & Counterclaim ("A&C") ¶ 12). While employed with Defendant Vast Solutions Group, LLC, Ms. Whittemore served as an Assistant General Manager. (SAC ¶ 87, ECF No. 45). As part of her duties, Ms. Whittemore would read and respond to any emails sent to Kenner French, Governor of Defendant Vast Solution Group, LLC. (Anti-SLAPP MTD 6:2–6, 8:3–4). During her employ, Ms. Whittemore's mother, Lauren Whittemore ("L. Whittemore") worked for an affiliated company, Defendant Anderson Business Advisors, LLC ("Defendant ABA"). (*See id.* ¶ 94). On March 19, 2019, Defendant ABA terminated L. Whittemore's employment. (*Id.*). Shortly thereafter, Ms. Whittemore came across an email Andrew "Toby" Mathis, President of Defendant ABA, sent to Mr. French, and a Pierre LeDorze, discussing L. Whittemore's termination. In the email, Mr. Mathis states:

> We had to let [L. Whittemore] go. I know this seems obvious, but please do not hire her.
>
> I know her daughter [Ms. Whittemore] works for AFS.[1]  That is fine so long as she is positive.  If her attitude turns as a result of her mom's termination, we will have to discuss.

(Mr. Mathis Email, Ex. 4 to Anti-SLAPP MTD, ECF No. 92-2). On March 25, 2019, Ms. Whittemore sent this email to L. Whittemore. (SAC ¶ 96); (A&C ¶ 15). In June of 2019, L. Whittemore filed an EEOC charge, and subsequently an action in state court against Defendant ABA, claiming discrimination based on age and sex. (*See* SAC ¶¶ 93, 113). Not long after L.

---

[1] Ms. Whittemore states "AFS" is in reference to Anderson Financial Services, LLC, a company affiliated with Vast. (Anti-SLAPP MTD 8:15–16).

1  Whittemore filed her action, Ms. Whittemore was demoted from Associate General Manager to
2  Personal Assistant, stripping Ms. Whittemore of her securities duties. (*Id.* ¶¶ 114–15).  As a
3  result, on June 30, 2019, Ms. Whittemore filed a charge against Defendant Anderson Financial
4  Services, LLC, with the EEOC for suffering retaliation and discrimination as a result of helping
5  L. Whittemore file her own charge of discrimination. (A&C ¶ 22); (SAC ¶ 4).  Ms. Whittemore
6  alleges that Mr. French tormented her after filing the EEOC charge, pressuring her to explain
7  why she filed the charge in front of others. (SAC ¶¶ 118–19); (Second EEOC Charge at 25–26,
8  Ex. 5 to Anti-SLAPP MTD, ECF No. 92-2).  She was also excluded from a business trip she
9  was previously supposed to attend. (SAC ¶ 120); (Second EEOC Charge at 27, Ex. 5 to Anti-
10 SLAPP MTD).  On July 18, 2019, Ms. Whittemore was terminated. (SAC ¶ 121).  Days later,
11 on July 24, 2019, Ms. Whittemore filed a second charge against Defendant Vast Holdings
12 Group, LLC ("Defendant VHG") with the EEOC for retaliation, discrimination, and
13 termination. (SAC ¶ 122); (Second EEOC Charge, Ex. 5 to Anti-SLAPP MTD).

14 Ms. Whittemore filed the instant action on November 6, 2019, and filed her SAC on
15 November 5, 2020. (*See generally* Compl., ECF No. 1); (SAC).  In it, she alleges four causes of
16 action: (1) retaliation under 42 U.S.C. § 2000e *et. seq.* and NRS 613.330 *et. seq.*; (2) retaliation
17 under the Age Discrimination in Employment Act; (3) interference with prospective business
18 advantage; and (4) violation of the Fair Labor Standards Act. (SAC ¶¶ 139–180).  Vast
19 answered the SAC and countersued Ms. Whittemore for abuse of process on February 19, 2021.
20 (*See generally* A&C, ECF No. 85).  Ms. Whittemore then moved to dismiss the Counterclaim
21 under Nevada's Anti-SLAPP statute on March 30, 2021. (*See generally* Anti-SLAPP MTD).

22 **II.     LEGAL STANDARD**

23 Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon
24 which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
25 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on

which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant

to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III.   DISCUSSION

At issue is Vast's Counterclaim, which alleges an abuse of process claim. (A&C ¶¶ 26–37). In her Anti-SLAPP MTD, Ms. Whittemore contends that in filing its Counterclaim, Vast seeks to chill Ms. Whittemore's speech and dissuade her from bringing her claims against Vast. (Reply 3:18–21, ECF No. 102); (Anti-SLAPP MTD 12:13–14:10). In the alternative, she argues the Court should dismiss Vast's Counterclaim because the statements she made to the EEOC are privileged.[2] (Anti-SLAPP MTD 14:12–15:13). The Court addresses each argument in turn.

#### a. Dismissal under Nevada's Anti-SLAPP Statute

A district court analyzing a special motion to dismiss under Nevada's anti-SLAPP statute engages in a two-step analysis. NRS 41.660(3). First, the court "[d]etermine[s] whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of . . . the right to free speech in direct connection with an issue of public concern." *Id.* 41.660(3)(a). If the moving party fails to carry its burden at this first step, the inquiry ends and the case advances to discovery. *Coker v. Sassone*, 432 P.3d 746, 748 (Nev. 2019). If the moving party succeeds, however, the court advances to the second step. There, the burden shifts to the non-moving party to show "with prima facie evidence a probability of prevailing on the claim[s]." NRS 41.660(3)(b); *Coker*,

---

[2] The Court need not discuss litigation privilege because it grants dismissal under Nevada's Anti-SLAPP statute.

432 P.3d at 748.  If the non-moving party fails to satisfy its burden on the second step, the court dismisses the action. *See id.* 41.660(5).

The first step of Nevada's anti-SLAPP analysis holds two components: (1) determining if the non-moving party's claims for relief are based on a "communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern"; and, if so, (2) determining if such communication was in "good faith." *Id.* 41.660(3)(a).  NRS 41.637 defines four forms of communication that can satisfy the first component.  The most relevant one here is the third form listed at NRS 41.637(3), which concerns a "[w]ritten or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law." *Id.* 41.637(3); *Omerza v. Fore Stars, Ltd.*, 455 P.3d 841, at *2 (Nev. 2020) (unpublished).  To then satisfy the second component of "good faith," the communication must be "truthful or made without knowledge of its falsehood." *Shapiro v. Welt*, 389 P.3d 262, 268 (Nev. 2017) ("[N]o communication falls within the purview of NRS 41.660 unless it is 'truthful or is made without knowledge of its falsehood.'") (quoting NRS 41.637).

In analyzing the merits of Ms. Whittemore's Anti-SLAPP MTD, the Court turns to the Counterclaim's allegations since she challenges solely the "legal sufficiency" of Vast's claim. (*See* Reply 15:26–28); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018), *and cert. denied sub nom. Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 139 S. Ct. 1446 (2019) ("[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated.").

///

///

*i. Form of Communication under NRS 41.637(3)*

For a statement to fall under the protection of NRS 41.637(3), it must "(1) relate to the substantive issues in the litigation and (2) be directed to persons having some interest in the litigation." *Patin v. Ton Vinh*, 429 P.3d 1248, 1251–52 (Nev. 2018). While NRS 41.637(3)'s reach appears broad, it does not cover "any connection, however remote, with an official proceeding." *Id.* at 1250. Here, one statement allegedly made by Ms. Whittemore serves as the basis for Vast's abuse of process claim: an email Ms. Whittemore disclosed to the EEOC of Mr. Mathis discussing her potential termination. Ms. Whittemore contends this statement is a form of communication protected under NRS 41.637(3), and the Court agrees. In her first charge, Ms. Whittemore states certain of her responsibilities were removed after she helped L. Whittemore file her own EEOC charge against Defendant ABA. (*See* First EEOC Charge at 38, Ex. 6 to Anti-SLAPP MTD, ECF No. 92-2).[3] She then filed a second charge, complaining that Defendant VHG: (1) retaliated against her by pressuring her into defending her reason for filing her first charge and excluding her from a business trip she was previously supposed to attend; and (2) terminated her because she filed her first EEOC charge. (*See* Second EEOC Charge at 25–29). Mr. Mathis's email directly relates to the substantive issues in this litigation—employment discrimination—because it details members of Defendants ABA and VHG discussing Ms. Whittemore's potential termination if her attitude changed because of her mother's termination.[4] In addition, the email is directed to Ms. Whittemore, precisely the

---

[3] The Court may consider Ms. Whittemore's EEOC charges, which are referenced in her SAC and Vast's Counterclaim, and upon which the parties' claims are based, without converting the instant Motion to a motion for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) ("A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

[4] Vast argues that Ms. Whittemore's disclosure of Mr. Mathis's email to help her mother file her own EEOC charge is not protected activity under Title VII, and thus, not protected under NRS 41.673(3). (Resp. 12:9–14:26). However, the Court is unpersuaded because the inquiry before this Court is not whether Ms. Whittemore disclosing the email constitutes protected activity under Title VII. Rather, it is whether Ms. Whittemore's "claim is based upon a good faith communication in furtherance of . . . the right to free speech in direct connection with

person with an interest in this litigation.  Thus, both prongs being met, the Court turns to the issue of good faith.[5]

### ii. "Good Faith" under NRS 41.637

The next issue is determining whether the relevant statements are "good faith communications" by being "truthful" or "made without knowledge of . . . falsehood". *See* NRS 41.637; *id.* 41.660(a).  Vast argues Ms. Whittemore did not file her EEOC charge in good faith because she filed it to protect herself from unlawfully disclosing Mr. Mathis's email. (Resp. 15:3–16:19).  Vast goes so far as to contend that Ms. Whittemore *admits* she filed her first EEOC charge to protect herself from "stealing" the email. (*See id.* 11:11–26).  Both contentions, however, are belied by the plain language of her EEOC charges. (*See* First EEOC Charge at 38, Ex. 6 to Anti-SLAPP MTD) ("Certain responsibilities were removed from my position" after L. Whittemore filed a charge with the EEOC against Defendant ABA); (Second EEOC Charge at 26, Ex. 5 to Anti-SLAPP MTD) ("I told them that there was also verbal discussion about my termination, and that I was in fear of my job so I discussed the email with my mom.  I told them I filed the charge to protect myself from termination because of what Anderson could do.").  Ms. Whittemore states firmly that certain of her responsibilities were removed after her mother filed her EEOC charge. (First EEOC Charge at 38, Ex. 6 to Anti-SLAPP MTD).[6]  That she stated she filed her first EEOC charge because she was in fear of

---

an issue of public concern." *See* NRS 41.660(3).  Vast's argument has little relevance to a defense against dismissal of their abuse of process claim under Nevada's Anti-SLAPP statute and reads more as an argument raised to seek dismissal of Ms. Whittemore's employment discrimination claims.

[5] Vast proffers two additional arguments the Court disposes of here as they are wholly unavailing.  First, Vast contends Ms. Whittemore filed her first EEOC charge prematurely because the alleged retaliation occurred after she filed her charge. (Resp. 10:18–11:10).  Ms. Whittemore's allegations belie this: she claims she suffered retaliation on or about June 27, 2019, then filed her first EEOC charge on June 30, 2019. (SAC ¶¶ 113–14, 117). Second, Vast contends Ms. Whittemore's first EEOC charge does not identify any protected activity she engaged in as a basis for the charge. (Resp. 12:9–17).  However, Ms. Whittemore alleges, and her EEOC charge bears out, that she was demoted and had certain of her responsibilities removed after her mother filed her own EEOC charge. (*See* SAC ¶¶ 114–15); (First EEOC Charge at 38, Ex. 6 to Anti-SLAPP MTD).

[6] Vast also contends Ms. Whittemore did not mention in her Second EEOC charge that she filed her first charge because she faced retaliation or discrimination. (Resp. 11:26–12:2).  The Court, however, sees no reason why

being terminated does not negate that she filed it because she was stripped of her job duties as a result of helping her mother file an EEOC charge against an affiliated entity.  Thus, taken together, the Court is satisfied that Ms. Whittemore's statements were truthful.  Therefore, Ms. Whittemore "has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of . . . the right to free speech in direct connection with an issue of public concern." NRS 41.660(3)(a).

### iii. Probability of Prevailing on the Claims

The Court next moves to the second step of Nevada's anti-SLAPP statute.  This step requires the Court to determine if Vast "has demonstrated with prima facie evidence a probability of prevailing" on their claim. NRS 41.660(3)(b).  Vast's sole claim constitutes abuse of process.  They allege that Ms. Whittemore abused the EEOC process by creating false circumstances to file additional claims with the EEOC and/or to sue Defendants for discrimination and retaliation if Defendant Vast enforced her employment agreement. (A&C ¶ 32).  Ms. Whittemore maintains that she did not abuse the EEOC process because she filed her charges to report illegal retaliation, discrimination, and termination she and her mother faced at the hands of Vast. (Reply 11:20–12:21).

To state a claim for abuse of process, the claimant must allege two elements: (1) an ulterior purpose by the opposing party other than resolving a legal dispute, and (2) a willful act in the use of the legal process that is "not proper in the regular conduct of the proceeding." *Kovacs v. Acosta*, 106 Nev. 57, 787 P.2d 368, 369 (1990).  Liability for abuse of process is not imposed for "the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." Restatement (Second) of Torts § 682 cmt. a; *Lamantia v. Redisi*, 38

---

Ms. Whittemore would need to reiterate her reasoning for filing her first EEOC charge in her second one, primarily because she did so already in her first charge.

P.3d 877, 879 n.8 (Nev. 2002) (citing the Restatement); *see also Golden v. Dungan*, 97 Cal. Rptr. 577, 581 (Cal. 1971) (affirming dismissal of abuse of process claim based on initiation of an action).  Put differently, an ulterior purpose is not alone sufficient; the claimant must allege facts plausibly indicating how the defendant willfully misused legal process to further the improper purpose. *See Land Baron Invs. Inc. v. Bonnie Springs Family Ltd.*, 356 P.3d 511, 519 (Nev. 2015) ("the claimant must provide facts, rather than conjecture, showing that the party intended to use the legal process to further an ulterior purpose.")

Here, Vast fails to establish with sufficient plausibility that Ms. Whittemore abused the EEOC process.  Vast alleges that Ms. Whittemore filed her first EEOC charge to insulate herself from future adverse employment action or to sue Vast for disciplining her for breaching her employment agreement. (A&C ¶¶ 10–25); (Resp. 17:27–19:26).  While possible, the plain language in her EEOC charges belie Vast's allegations.  Her EEOC charges state that: (1) certain of her responsibilities were removed after she helped her mother file an EEOC charge against Defendant ABA; (2) Mr. French pressured Ms. Whittemore into defending her reason for filing her first charge in front of others; (3) Mr. Kenner excluded her from a business trip she was previously supposed to attend; (4) Mr. Kenner stripped her of access to an operating system central to carrying out her duties; and (5) she was terminated because she filed her first EEOC charge. (*See* First EEOC Charge at 38, Ex. 6 to Anti-SLAPP MTD); (Second EEOC Charge at 25–29, Ex. 5 to Anti-SLAPP MTD).  Further, as the Court discussed above, Vast's contention that Ms. Whittemore admitted she filed her first EEOC charge to protect herself from "stealing" the email is directly contradicted by her charges.  In addition, that Ms. Whittemore stated she filed her first EEOC charge because she was in fear of being terminated indicates that she filed the first charge precisely because she was stripped of her job duties and feared further retaliation.  When taken together, Vast's allegations are not sufficient to allege an ulterior purpose for Ms. Whittemore's EEOC charges.  Even if they were, her EEOC charges

also contravene the notion that she willfully misused the EEOC process to further any improper purpose. (*See* First EEOC Charge at 38, Ex. 6 to Anti-SLAPP MTD); (Second EEOC Charge at 25–29, Ex. 5 to Anti-SLAPP MTD); *Land Baron Invs. Inc.*, 356 P.3d at 519.  Accordingly, as Vast fails to meet their burden, the Court grants Ms. Whittemore's Anti-SLAPP Motion to Dismiss. *See* NRS 41.660(5).

### b. Leave to Amend

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, amendment of Vast's Counterclaim would be futile.  The Court has discussed in length that Vast's allegations of Ms. Whittemore abusing the EEOC process based on an ulterior motive is wholly contradicted by the charges she filed with the EEOC.  In those charges, she describes that she filed them in response to multiple efforts of retaliation, discrimination, and ultimately, termination.  Ms. Whittemore's charges firmly demonstrate that she filed because she believed she suffered adverse employment action and would suffer more.  As such, any attempt to amend Vast's claim would be futile.  Accordingly, the Court denies Vast leave to amend.[7]

///

---

[7] Because the Court finds amendment would be futile, the Court denies Vast's request to allow the parties to pursue discovery on their claim.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 92), is **GRANTED**.

**DATED** this __2__ day of March, 2023.

_____
Gloria M. Navarro, District Judge
United States District Court